# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRANSAMERICA LIFE INSURANCE COMPANY, | CV 15-07623-RSWL-Ex |
| Plaintiff-in-Interpleader, | **ORDER re Cross-Claimant Bill Biltagi's Motion for Summary Judgment [99]; Cross-Claimants Yousef Rabadi & Intesar Alturk's Motion for Summary Judgment [100]; Cross-Defendant Brian C. Lysaght & Lysaght Law Group's Motion for Summary Judgment [118]** |
| v. | |
| YOUSEF RABADI, INTESAR ALTURK, BILL BILTAGI, LYSAGHT LAW GROUP LLP, and DOES 1 through 10, | |
| Defendants-in-Interpleader. | |
| YOUSEF RABADI, INTESAR ALTURK, and BILL BILTAGI, | |
| Cross-Claimants, | |
| v. | |
| LYSAGHT LAW GROUP LLP and BRIAN C. LYSAGHT, | |
| Cross-Defendants. | |

Currently before the Court are the following Motions: (1) Cross-Claimant Bill Biltagi's Motion for Summary Judgment [99]; (2) Cross-Claimant Yousef Rabadi

1

and Intesar Alturk's Motion for Summary Judgment [100] (collectively, "Cross-Claimants' Motions"); (3) and Cross-Defendant Brian C. Lysaght and Lysaght Law Group's Motion for Summary Judgment or in the Alternative Summary Adjudication ("Cross-Defendants' Motion") [118-1]. Having reviewed all papers submitted pertaining to this Motion, the Court **NOW FINDS AND RULES AS FOLLOWS:** the Court **GRANTS** Cross-Claimants' Motions [99, 100]. The Court **DENIES** Cross-Defendants' Motion [118].

## I. BACKGROUND

**A.** **Factual Background**

    1. Parties and Relevant Non-Parties

Cross-Claimants Bill Biltagi, Yousef Rabadi, and Intesar Alturk (collectively, "Cross-Claimants")[1] are beneficiaries to a life insurance policy (the "Policy") Transamerica Life Insurance Company ("Transamerica") issued on behalf of Victoria Rabadi (the "Insured") on July 27, 2011. Decl. of Sue Lewis ("Lewis Decl.") Exs. A at 1; B; ECF No. 84-1; Decl. of Robert Tauler ("Tauler Decl.") Ex. A at 487, ECF No. 136-1.

    a. *Cross-Claimants & Cross-Defendants*

Cross-Claimant Bill Biltagi was listed on beneficiary transfer papers as the Insured's "business associate," and holds a 9% interest in the Policy.

---

[1] Because Cross-Claimant Yousef Rabadi shares the same last name with various other non-parties, the Court will refer to Cross-Claimants—when discussed individually–by their first and last names (i.e. Yousef Rabadi, Intesar Alturk).

2

Lewis Decl. Ex. B. He was the owner of the Policy upon the Insured's death and remains the owner to this day. Tauler Decl. Ex. A, at 489. Yousef Rabadi was identified as the Insured's son, and later her nephew, on Policy documentation. See id. at 207, 459. He has a 47% interest in the Policy. Id. at 487. Intesar Alturk has a 44% interest in the Policy, and was identified as the Insured's "business associate." Id. at 487. She is apparently the mother of Abraham Khader, the Insured's broker who prepared most of her Policy paperwork. Decl. of Brian Lysaght ("Lysaght Decl.") Ex. 1, at ¶ 49, ECF No. 107-1.

Cross-Defendants Brian C. Lysaght and Lysaght Law Group (collectively, "Cross-Defendants") are a law firm that entered into a contingency fee agreement with its clients, Josef Rabadi, Reem Rabadi, and Sandra Rabadi (collectively, "State Court Rabadis") regarding representation in Sandra Rabadi, et al. v. Noura Shoubash, et al., Los Angeles Superior Court Case No. BC 459192 ("State Court Action"). Decl. of Andre Boniadi ("Boniadi Decl.") Ex. 1, at 7-8, ECF No. 100-3. Cross-Defendants had an attorney's lien (the "Lien") on proceeds related to the State Court Action. Id. at 8. Neither Cross-Defendants nor the State Court Rabadis were named as beneficiaries to the Policy at hand. See Lewis Decl. ¶ 5, Ex. B. Cross-Defendants also did not represent the Insured or Yousef Rabadi. See Decl. of Yousef Rabadi ("Rabadi Decl.") ¶ 9, Ex. 1, ECF No. 100-

1  4.

2       b.  *Non-Parties*

3       Abraham Khader ("Khader"), was a licensed life

4  settlement insurance broker who prepared the Insured's

5  life insurance applications.  See Tauler Decl. Ex. A,

6  at 234, 357.  Michael Lotta ("Lotta") was Khader's

7  attorney in an Orange County state-court case involving

8  Khader's alleged fraudulent purchase and sale of life

9  insurance contracts, Nouha Hreish et al. v. Abraham

10 Khader, et al., Case No. 30-2013-00649323-CU-FR-CJC

11 ("Orange County Action").  See Decl. of Natasha Riggs

12 ("Riggs Decl.") Ex. 1 at ¶¶ 17-18, ECF No. 121-1.[2]

13      Nabil Yousef Rabadi is the Insured's brother, who

14 was a joint owner of the Policy at one point.  Tauler

15 Decl. Ex. A, at 395, 489.  Reem Al-Rabadi is Yousef

16 Rabadi's mother and Nabil Rabadi's wife, listed as a

17 contingent beneficiary on the Policy.  Id. at 488.

18      2.  The Life Insurance Policy

19      On April 8, 2011, the Insured applied with

20 Transamerica for a 10-Year Level Term life insurance

21 policy totaling $4,000,000.  Id. at 62-65.  Her

22 application represented that she had real property

23 holdings of $19 million, a family net worth of $17.9

24

25      [2] Khader is also currently the subject of a formal
   Accusation by the California Insurance Commissioner, filed on
26 November 17, 2016.  Lysaght Decl. Ex. 1.  The Accusation seeks to
   revoke Khader's insurance broker's license.  Id. at ¶ 49.  The
27 Accusation also claims that Khader made his mother, Intesar
   Alturk, a beneficiary to life insurance policies where she had no
28 real interest with the insureds.  Id. at ¶ 29.

million, annual earned income of $80,000, and unearned income of $510,000. <u>Id.</u> at 62-65, 71-74. On July 27, 2011, Transamerica insured Victoria Rabadi under life insurance policy number 60160747. <u>Id.</u> at 169. Later in July 2011, Khader requested on the Insured's behalf an increase in the Policy from $4 million to $5.5 million, effective September 21, 2011. <u>Id.</u> at 196, 222, 951.

On September 21, 2011, Yousef Rabadi—initially listed as the Insured's "son," then later her "nephew"—was designated the primary beneficiary. <u>Id.</u> at 209-210. He was a 100% beneficiary at the time. <u>Id.</u>

For the first six months, the Policy premium payments were $11,000 per quarter. <u>Id.</u> at 212-214. They increased to $27,475 when Khader converted the Policy from an Increased Term Policy to a Universal Life Policy on January 21, 2012. <u>Id.</u> at 241, 274. Yousef Rabadi sent initial premium payments for both iterations of the Policy. <u>Id.</u> at 2, 198. It is unclear whether the Insured made any premium payments on the Policy. <u>See</u> <u>generally</u> Tauler Decl. Ex. A.

Khader initially refused to file a questionnaire that asked questions to ferret out whether the Policy was a Stranger Oriented Life Insurance ("STOLI") Policy. <u>Id.</u> at 322, 326-29. On April 26, 2012, he finally filled out a questionnaire. <u>Id.</u> at 326-29.

On April 9, 2013, the Insured transferred 100% of

the ownership in the Policy to Nabil Rabadi, her
brother and Yousef Rabadi's father. Id. at 395-96.
Id. On October 16, 2013, beneficiary designation and
ownership change forms were submitted, changing owners
from Nabil Yousef Rabadi (100%) to: (1) Nabil Yousef
Rabadi (50%) and (2) Bill Biltagi (50%). Id. at 411-
12. Bill Biltagi was identified as the Insured's
"business associate." Id. at 432. Yousef Rabadi was
now identified as the Insured's "nephew," not her son.
Id. On November 26, 2013, the Insured submitted
another beneficiary designation form, introducing
Intesar Alturk, Khader's mother, as a 41% beneficiary.
Id. at 459. She was identified as the Insured's
"business associate." Id. at 459.

When Policy benefits became due, the Policy
provided life insurance coverage totaling $5,500,000.
See Lewis Decl. ¶ 9. Cross-Claimants were designated
beneficiaries as follows: Yousef Rabadi (47%), Intesar
Alturk (44%), and Bill Biltagi (9%). Id. at Ex. B.

3. The Attorney's Lien and State Court Action

On April 11, 2011, the State Court Rabadis (Josef,
Reem, and Sandra) filed Sandra Rabadi, et al. v. Noura
Shoubash, et al., the State Court Action. Bill
Biltagi's Req. for Judicial Notice ("Biltagi's RJN")
Ex. 3, ECF No. 99-4. Khader and Intesar Alturk were
defendants in the State Court Action. Id. On May 5,
2013, the State Court Rabadis retained Cross-Defendants
///

6

to represent them in the State Court Action.[3]  Boniadi
Decl. Ex. 1.

Cross-Defendants entered into a contingency fee
agreement with the State Court Rabadis.  _Id._  The
"Legal Fees" section of the contingency fee agreement
provided:

> Attorney will receive 33% of the net recovery
> received from any and all defendants, to any or
> all plaintiffs, in kind or cash, whether by way
> of verdict, award, or settlement as a result of
> this litigation engagement. The term "net
> recovery" means (1) the total of all amounts
> received by settlement, arbitration award or
> judgment including any awards of attorneys fees,
> (2) minus all costs and disbursements actually
> paid by Clients.

_Id._ at 8.

Another section defined the "Attorney's Lien:"

> Clients hereby grant Attorney an ATTORNEY'S LIEN
> on any and all claims or causes of action that
> are the subject of the representation. The Lien
> will be for sums due and owing under this
> agreement and will attach to any recovery
> obtained, whether by arbitration award,
> judgment, settlement, or otherwise.

_Id._ at 11-12.

a.  _State Court Rabadis' Meeting with Khader_

On March 4, 2014, Lotta—Khader's attorney in the
Orange County Action—and Khader allegedly met with the
State Court Rabadis unbeknownst to Cross-Defendants.
Am. Decl. of Natasha Riggs ("Riggs Am. Decl.") ¶ 9, ECF
No. 124.  At that meeting, Khader apparently induced

---

[3] The Fourth Amended Complaint in the State Court Action
alleged that Khader and Intesar Alturk were members of an
enterprise designed to cheat the State Court Rabadis out of money
owed them as investors in life insurance policies.  Lysaght Decl.
¶ 2, ECF No. 108.

the State Court Rabadis into dismissing the State Court Action against him and Intesar Alturk in return for future compensation from other life insurance policies. Id. at ¶ 9. On March 6, 2014, Lotta sent Cross-Defendants a letter advising that the State Court Rabadis had settled the case "for no exchange of payment of funds by either party" and enclosed a proposed Request for Dismissal of the Complaint with prejudice. Supp. Decl. of Brian Lysaght ("Lysaght Supp. Decl.") ¶ 6, Ex. 3, ECF Nos. 108, 108-2. On March 14, 2014, Allen Chau sent Cross-Defendants a letter advising that he was the State Court Rabadis' new attorney and enclosed substitution of attorney forms. Riggs Decl. Ex. 9, at 7:17-20, ECF No. 121-8.

On April 15, 2014, Cross-Defendants filed a Notice of Attorney's Lien in the State Court Action. Decl. of Vivian I. Orlando ("Orlando Decl.") Ex. 1, ECF No. 84-2. The Notice of Lien provided:

> Please take notice that [Cross-Defendants have] a contractual attorney's lien . . . on all proceeds and compensation of any kind paid to Plaintiffs and Cross-Defendants Josef Rabadi, Reem Rabadi, and/or Sandra Rabadi ("Clients") in this action, whether in settlement, after trial, or otherwise . . . whether transmitted directly or indirectly by payments to third parties. Said charging lien includes compensation by or on behalf of insurance companies, brokers, life settlement companies . . . .

Id.

The State Court Rabadis dismissed their claims against Khader and Intesar Alturk in the State Court Action on May 7, 2014, and the case was ultimately

dismissed for failure to prosecute on July 1, 2016.
Riggs Decl. Ex. 11, ECF No. 121-10.  Per Cross-
Defendants, the State Court Rabadis invested in
Khader's improper policies, filed a lawsuit against
him, then rejoined the enterprise upon dismissing the
State Court Action against Khader and Intesar Alturk.
Lysaght Supp. Decl. ¶ 17.

     The Insured died on May 18, 2015.  Lewis Decl. Ex.
C.  Bill Biltagi filed his claim for benefits to the
Policy on June 2, 2015, claim number 505200394159, as
did the other Cross-Claimants.  Lewis Decl. Ex. D;
Decl. of Bill Biltagi ("Biltagi Decl.") ¶ 5, ECF No.
99-1.  On June 29, 2015, Cross-Defendants advised
Transamerica that their Lien applied to up to 30% of
the Policy proceeds, triggering the instant
Interpleader Action in federal court.  Orlando Decl.
Ex. 2.

**B.**  **Procedural Background**

     On September 18, 2015, Transamerica paid the
undisputed 70% of the Policy proceeds to
Cross-Claimants' client trust account.  Compl. ¶ 20,
ECF No. 1.  Because Transamerica was unable to
determine which parties were owed the remaining 30% of
the Policy death benefits ("Policy proceeds" or
"interpled funds"), totaling $1,653,354.67, it filed a
Complaint in Interpleader on September 29, 2015 [1].
The interpled funds are on deposit with the Court as of
October 7, 2015 [8].

On January 11, 2016, Cross-Defendants filed their Answer to the Complaint-In-Interpleader, asserting various affirmative defenses [15].  On January 13, 2016, Cross-Claimants filed their Answer to the Complaint-In-Interpleader [20] and Cross-Claim against Cross-Defendants, (1) for declaratory judgment that Cross-Defendants do not have an enforceable Lien against either Cross-Claimants or the Policy, and seeking a determination of their rights to the Policy proceeds.  Cross-Cl. ¶ 9, ECF No. 22.[4]

Cross-Claimants filed a Motion to Strike Cross-Defendants' Affirmative Defenses in its Answer to the *Complaint-in-Interpleader* on February 1, 2016 [28], which the Court granted in part and denied in part [51].  On June 8, 2016, Cross-Defendants filed an Answer to the *Cross-Complaint*, raising affirmative defenses for unclean hands, illegal STOLI policy, and conspiracy [66] (emphasis added).  Cross-Claimants did not file a Motion to Strike this answer.

On December 21, 2016, the Court granted Transamerica's Motion to Dismiss, discharging it of all liability regarding the Policy and allowing the case to proceed between Cross-Claimants and Cross-Defendants [97].

---

[4] The second cross-claim was for Intentional Interference with Contractual Relations, which was dismissed on May 17, 2016 in the Court's Order Granting Cross-Defendants' Motion to Strike the second cross-claim pursuant to California Code of Civil Procedure § 425.16 ("Anti-SLAPP" Motion) [59].

On February 28, 2017, Cross-Claimants separately filed Motions for Summary Judgment as to the Complaint-In-Interpleader and Cross-Claim for Declaratory Relief [99, 100]. The Court received Cross-Defendants' Oppositions to the Motions for Summary Judgment on March 7, 2017 and March 8, 2017 [106, 109] and Cross-Claimants' joint Reply on March 13, 2017 [112, 138]. Cross-Defendants filed their own Motion for Summary Judgment as to their affirmative defenses on March 14, 2017 [118-1]. Cross-Claimants' separate Oppositions followed on March 21, 2017 [129, 133], and Cross-Defendants filed their Reply on March 28, 2017 [141].

## II. FINDINGS OF FACT

1. The Insured was insured under Transamerica Life Insurance Policy number 60160747. Cross-Cl. Bill Biltagi's Stmt. of Uncontroverted Facts ("Biltagi's SUF") ¶ 1, ECF No. 99-5; Cross-Cls.' Yousef Rabadi & Intesar Alturk's Stmt. of Uncontroverted Facts ("Rabadi's SUF") ¶ 1, ECF No. 100-1; see Lewis Decl. ¶ 4, Ex. A.

2. The Rabadi State Court Action was filed on April 7, 2011. Cross-Defs.' Stmt of Uncontroverted Facts ("Cross-Defs.' SUF") ¶ 24, ECF No. 120; Biltagi's RJN Ex. 3, at 1667.

3. On June 2, 2015, Bill Biltagi filed his claim for benefits under the Policy, Claim number 505200394159. Biltagi's SUF ¶ 8; Lewis Decl. Ex.

1    D, at 57.

2    4.  On May 5, 2013, the State Court Rabadis signed a

3        Retainer agreement with Cross-Defendants.

4        Biltagi's SUF ¶ 11; Rabadi's SUF ¶ 4; Cross-Defs.'

5        SUF ¶ 65; Boniadi Decl. Ex. 1.

6    5.  On October 1, 2013, change in beneficiary forms

7        submitted to Transamerica changed the Policy owners

8        and beneficiaries as follows: Nabil Yousef Rabadi

9        (50%); Bill Biltagi (50%).  Cross-Defs.' SUF ¶ 66;

10       Tauler Decl. Ex. A, at 411-414.

11   6.  Cross-Defendants filed a Notice of Attorney's Lien

12       in Los Angeles Superior Court Case number BC459192,

13       Sandra Rabadi et al. v. Noura Shoubash, et al. on

14       April 15, 2014.  Biltagi's SUF ¶ 15; Orlando Decl.

15       Ex. 1.

16   7.  Around May 2014, Cross-Defendants served

17       Transamerica's counsel with a copy of its Notice of

18       Attorney's Lien.  Biltagi's SUF ¶ 17; Rabadi's SUF

19       ¶ 6; Orlando Decl. ¶ 2, Ex. 1.

20   8.  Transamerica, the corporation, received a copy of

21       the Notice of Attorney's Lien on or around May 13,

22       2014.  Biltagi's SUF ¶ 18; Rabadi's SUF ¶ 6; Lewis

23       Decl. ¶ 8, Ex. F.

24   9.  The Insured died on May 18, 2015, and Cross-

25       Claimants, the Beneficiaries, made claims to the

26       full Policy proceeds.  Biltagi's SUF ¶¶ 19-20;

27       Rabadi's SUF ¶¶ 7-8; Lewis Decl. Exs. C-D.

28   10. The Insured and Yousef Rabadi have never been

Cross-Defendants' clients.  Biltagi's SUF ¶ 26; <u>see</u> Rabadi's SUF ¶ 11; Rabadi Decl. ¶ 6.

**III. DISCUSSION**

**A.  <u>Legal Standard</u>**

1.  <u>Summary Judgment Standard</u>

Federal Rule of Civil Procedure 56 states that a "court shall grant summary judgment" when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" for purposes of summary judgment if it might affect the outcome of the suit, and a "genuine issue" exists if the evidence is such that a reasonable fact-finder could return a verdict for the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  The evidence, and any inferences based on underlying facts, must be viewed in the light most favorable to the opposing party.  <u>Twentieth Century-Fox Film Corp. v. MCA, Inc.</u>, 715 F.2d 1327, 1329 (9th Cir. 1983).  In ruling on a motion for summary judgment, the court's function is not to weigh the evidence, but only to determine if a genuine issue of material fact exists.  <u>Anderson</u>, 477 U.S. at 255.

Under Rule 56, the party moving for summary judgment has the initial burden to show "no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a); <u>see Nissan Fire & Marine Ins. Co. v. Fritz Cos.</u>, 210 F.3d 1099, 1102-03 (9th Cir. 2000).  The burden

13

then shifts to the non-moving party to produce admissible evidence showing a triable issue of fact. Nissan Fire & Marine Ins., 210 F.3d at 1102-03; see Fed. R. Civ. P. 56(a). Summary judgment "is appropriate when the plaintiff fails to make a showing sufficient to establish the existence of an element essential to [their] case, and on which [they] will bear the burden of proof at trial." Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 805-06 (1999); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The standard "provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issues of *material* fact." Anderson, 477 U.S. at 247-48.

**B.   Analysis**

> 1.   Bill Biltagi's Request for Judicial Notice is **GRANTED**

A court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known . . .; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  A court "must" take judicial notice "if a party requests it and the court is supplied with the necessary information."  Fed. R. Evid. 201(c)(2).

Bill Biltagi asks the Court to take judicial notice

14

of the following ("Biltagi's RJN"): (1) Lewis and Orlando Declarations attached to Transamerica's Motion to Dismiss [84-1, 84-2]; (2) Caption pages of the Complaint and First Amended Complaint and court docket portion of the State Court Action, <u>Sandra Rabadi et al. v. Noura Shoubash, et al.</u>, Los Angeles Superior Court case number BC459192. Biltagi's RJN ¶¶ 1-3, Exs. 1-3.

The Court may take judicial notice of previous filings in the same litigation between the same parties, like the Lewis and Orlando Declarations. <u>See Shuttlesworth v. City of Birmingham</u>, 394 U.S. 147, 157 (1969). A court may also "take judicial notice of the *existence* of another court's opinion or of the filing of pleadings in related proceedings; the Court may not, however, accept as true the facts found or alleged in such documents." <u>Peel v. BrooksAmerica Mortg. Corp.</u>, 788 F. Supp. 2d 1149, 1158 (C.D. Cal. 2011) (emphasis added)(citations omitted). Because the exhibits contain only the caption page and not the allegations of the complaint, the Court can take judicial notice of the State Court Action documents. Thus, the Court **GRANTS** Biltagi's RJN in its entirety [99-4].

2. <u>Yousef Rabadi & Intesar Alturk's Request for Judicial Notice is **GRANTED**</u>

Cross-Claimants Yousef Rabadi and Intesar Alturk seek judicial notice of the following ("Rabadi's RJN"): (1) Transamerica's Complaint-In-Interpleader filed on September 29, 2015 [1]; (2) the Court's Order Directing

Deposit of Interpleader Funds on October 7, 2015 [8];
(3) Cross-Defendants' Answer to the Complaint-in-
Interpleader, filed on January 11, 2016 [15]; (4)
Cross-Claimants' Answer to the Complaint-in-
Interpleader, filed on January 13, 2016 [20]; (5) Lewis
Declaration attached to Transamerica's Motion to
Dismiss, filed on October 18, 2016 [84-1].  Rabadi's
Req. for Jud. Ntc. ("Rabadi's RJN") ¶¶ 1-5, Exs. 1-5,
ECF No. 100-2.

Because "it is well established that a court can
take judicial notice of its own files and records under
Rule 201," Gerritsen v. Warner Bros. Entm't Inc., 112
F. Supp. 3d 1011, 1034 (C.D. Cal. 2015), and because
the Court already judicially noticed the Lewis
Declaration in Biltagi's RJN, the Court **GRANTS** Rabadi's
RJN in its entirety [100-2].

> 3.  Cross-Defendants' First Request for Judicial
>     Notice is **DENIED**

Cross-Defendants ask the Court to take judicial
notice ("Cross-Defendants' First RJN") of the minute
order in American General Life Insurance Company v.
Munshi, et al., 2:08-cv-6439-DDP(RZx), ECF No. 185.
Cross-Defs.' Req. for Jud. Ntc. ("Cross-Defs.' RJN")¶
1, Ex. 1, ECF No. 131.

The Court can consider Munshi as persuasive
authority, but "to the extent [Cross-Defendants] seek
to cite that case in support of their arguments,
judicial notice is also unnecessary: the Court can, and

will consider the reasoning of that ruling for whatever persuasive value it may have." <u>Diversified Capital Inv., Inc. v. Sprint Commc'ns, Inc.</u>, No. 15-cv-03796-HSG, 2016 WL 2988864, at *5 (N.D. Cal. May 24, 2016). The Court thus **DENIES** Cross-Defendants' First RJN in its entirety [119].

> 4.  <u>Cross-Defendants' Second Request for Judicial Notice is **GRANTED in Part and DENIED in Part**</u>

Cross-Defendants also seek judicial notice of the following: 1) Cross-Claimants' Rule 26 Initial Disclosures from this case; (2) the California Department of Insurance Amended Accusation against Khader and Alturk, dated November 17, 2016; and (3) the Verdict and Special Findings in <u>United States v. Carpenter</u>, No. 3:13-CR-226-RNC (D. Conn. June 6, 2016). Cross-Defs.' Sec. Req. for Judicial Notice ("Cross-Defs.' Sec. RJN") ¶¶ 1-3, ECF No. 142.

"Discovery items such as requests for discovery and responses to requests for discovery are not proper subjects for judicial notice because they are not 'self-authenticating' and thus cannot be verified." <u>United Safeguard Distributors Ass'n v. Safeguard Bus. Sys., Inc.</u>, 145 F. Supp. 3d 932, 942 (C.D. Cal. 2015). Because of this, and because it is unclear for what purpose the initial disclosures are proffered, the Court thus does not take judicial notice of Cross-Claimants' Rule 26 Initial Disclosures.

A court may "take judicial notice of the *existence*

of another court's opinion or of the filing of
pleadings in related proceedings; the Court may not,
however, accept as true the facts found or alleged in
such documents." Peel, 788 F. Supp. 2d at 1158
(emphasis added)(citations omitted).  The Court takes
judicial notice of the Department of Insurance
Accusation for the *existence* of its filing, but does
not rely on the statements therein in its ruling on the
instant Motions.

The Court can consider Carpenter as persuasive
authority, but judicial notice is unnecessary as Cross-
Defendants have already cited to Carpenter in their
Reply.  Cross-Defs.' Reply 12:17-18.  The Court will
consider the reasoning for whatever persuasive value it
may have.  Diversified Capital, 2016 WL 2988864, at *5.
5.

Accordingly, the Court **GRANTS** Cross-Defendants'
Second RJN as to the Department of Insurance
Accusation, but **DENIES** Cross-Defendants' Second RJN as
to the Carpenter case and Cross-Claimants' Rule 26
Initial Disclosures.

5.  The Parties' Evidentiary Objections

a.  *Bill Biltagi's Objection to Roth*
*Declaration*

Bill Biltagi objects to the Roth Declaration [126]
in its entirety.  Steven Roth was a disclosed, non-
testifying expert in Hreish v. Khader, the Orange
County Action against Khader and Intesar Alturk.  Decl.

18

of Steven Roth ("Roth Decl.") ¶ 2, ECF No. 126. Cross-Defendants proffer his declaration to show Khader's repeated involvement in STOLI policies. See generally Roth Decl. Because the Court does not consider any of the Roth Declaration in reaching its conclusions on Cross-Defendants' Motion for Summary Judgment,[5] it **SUSTAINS** as **MOOT** this objection [130].

   b. *Bill Biltagi's Objection to Riggs Declaration*

Bill Biltagi objects to the Riggs Declaration in its entirety and the attached exhibits on the grounds of irrelevance, inadequate evidentiary foundation, hearsay, and violation of Federal Rule of Civil Procedure 56(c)(4), among other things. Biltagi's Objs. ¶¶ 10-24, ECF No. 130. The Riggs Declaration [121] includes exhibits like the Third Amended Complaint in the Orange County Action, Cross-Defendants' requests for production and interrogatories in this action, a Status Conference Statement in the State Court Action, depositions in the Orange County Action, and State Bar searches for Lotta. See Riggs Decl. Exs. 1-16.

The Court **OVERRULES** Cross-Claimants' Objections to

_____

[5] The Roth Declaration and attached exhibits largely concern alleged life insurance and life settlement investment schemes led by Khader, Intesar Alturk, and Bill Biltagi that victimized Plaintiffs in the Orange County Action. Roth Decl. ¶ 4. Because the injured parties and alleged wrongdoing do not directly resolve key claims and affirmative defenses in this Action, the Court does not consider the Roth Declaration in its analysis.

19

Paragraph 9 because they are boilerplate and "devoid of any specific argument or analysis as to why any particular exhibit or assertion in a declaration should be excluded," United States v. HVI Cat Canyon, Inc., --–F. Supp. 3d–--, 2016 WL 7011348, at *5 (C.D. Cal. Sept. 30, 2016). The Court **SUSTAINS** Objections to Paragraphs 10-21 and Objections to Exhibits 1-16 as **MOOT**, as the Court has not relied on the objected-to evidence [130].[6]

  c. *Cross-Claimants' Objections to Third Riggs Declaration & Exhibits*

Cross-Claimants object to the Third Riggs Declaration [143] in its entirety on the following grounds: irrelevant, lacks foundation, conclusory, and that it violates Federal Rule of Civil Procedure 56(c)(4). Biltagi's Objs. to Third Riggs Decl. ¶ 1, ECF No. 146. They also object to Exhibits 17-23 attached to the Third Riggs Declaration.[7]

---

[6] Upon review, the discovery requests and responses in this case do not reveal any new information or documentation beyond what the parties already argue in their moving papers. Some of the exhibits are also largely repetitive of other exhibits and declarations the Court has already considered, that have been judicially noticed, or are not objected to. Finally, some of the exhibits—like Allen Chau's State Bar of California website profile, allegations that Cross-Claimants' counsel now represents the State Court Rabadis, or allegations relevant to the parties in the separate Orange County Action—do not clearly advance Cross-Defendants' affirmative defenses or the Lien's applicability, and thus were not considered in the Court's reasoning.

[7] These exhibits include Cross-Claimants' Rule 26 disclosures, the California Insurance Department's November 17,

The Court **SUSTAINS the** Objections to Exhibits 17-18 and 20-21 as **MOOT** [146] because the Court did not consider the substance of these exhibits in its ruling. The Court **SUSTAINS** Objections to Exhibits 19, 22-23—it is unclear why the Fifth Circuit and District of Connecticut opinions are relevant to the instant facts. To the extent Cross-Defendants wished to analogize these cases to the facts at hand, Cross-Defendants were welcome to cite and analyze them in their moving papers. The Court **OVERRULES** rote Objections to the entirety of the Riggs Third Declaration. <u>Doe v. Starbucks, Inc.</u>, No. SACV 08-0582 AG (CWx), 2009 WL 5183773, at *1 (C.D. Cal. Dec. 18, 2009)("[I]n motions for summary judgment with numerous objections, it is often unnecessary and impractical for a court to methodically scrutinize each objection and give a full analysis of each argument raised.")

      d. *Cross-Defendants' Objections to Biltagi Declaration*

Cross-Defendants object to specific paragraphs of the Biltagi Declaration on the following grounds: lack

---

2016 formal accusation against Khader; <u>United States v. Bazemore</u>, No. 15-10805 (5th Cir. Oct. 5, 2016); the Department of Insurance Commissioner's Bulletin No. SA-2011-02, dated September 25, 2011; the California Department of Insurance Press Release, June 22, 2012; an escrow agreement between Intesar Alturk and Josef Rabadi, one of the State Court Rabadis, listing Intesar Alturk's address as the same Tustin, California address where the State Court Rabadis live; and the verdict and special findings in <u>United States v. Carpenter</u>, No. 3:13-CR-226-RN, a District of Connecticut case dated June 6, 2016.

of foundation, improper legal conclusion and improper
lay opinion, lack of foundation, lack of personal
knowledge, inadmissible hearsay.  See Cross-Defs.'
Objs. to Biltagi Decl. 2:9-7:20, ECF No. 151.

Because many of Defendant's objections are
boilerplate and "devoid of any specific argument or
analysis as to why any particular exhibit or assertion
in a declaration should be excluded," United States v.
HVI Cat Canyon, Inc., ---F. Supp. 3d---, 2016 WL
7011348, at *5 (C.D. Cal. Sept. 30, 2016), the Court
**OVERRULES** Cross-Defendants' Objections to Paragraphs 2,
3, 5, 6, 11, 13, and 14.

The Court **SUSTAINS** the Objection to Paragraph 4, as
Bill Biltagi's statement that the Policy was
incontestable could be an improper layperson opinion
regarding the Policy's validity under relevant
California Insurance law.  The Court **SUSTAINS** as **MOOT**
the Objection to Paragraph 12, as the Court did not
rely on this objected-to evidence.

6.  Cross-Defendants' Motion for Summary Judgment
    is **DENIED**

The Court now turns to the merits of Cross-
Defendants' Motion.  The case boils down to this issue:
whether a law firm may assert its attorney's lien—from
a contingency fee agreement with clients in a state
court action—against life insurance policy proceeds to
which its clients are not beneficiaries, whether
through the lien's express terms or through affirmative

22

defenses allegedly linking the state-court clients to the policy beneficiaries.

Cross-Defendants move for summary judgment as to the affirmative defenses in their Answer to the Cross-Complaint [66]: illegality, unclean hands, and conspiracy. Cross-Defs.' Mot. 2:22-24. The Court cannot grant summary judgment as to these defenses.

a. *Policy Illegality*

Cross-Defendants ask that the Court determine the Policy is illegal for two reasons. First, the Policy violated the California Life Settlement Act ("CLSA") because the April 11, 2013 ownership transfer from the Insured to Nabil Rabadi was made for a price less than the death benefit, but was not conducted by a licensed life settlement broker. Id. at 2:24-3:3. Second, it was a STOLI policy, illegal in California since July 1, 2010. Because the Policy is illegal, Cross-Claimants may not recover as beneficiaries. Cross-Defs.' Reply 7:5-6.

Bill Biltagi counters that the STOLI Policy argument is moot, as (1) Transamerica already paid out the Policy proceeds and the two-year contestability period—to challenge or rescind the Policy—lapsed; (2) a life insurance policy is freely assignable as long as the owner has an insurable interest when the Policy was issued; and (3) Cross-Defendants lack standing to attack the Policy's legality because they are not the insurer, Transamerica. Biltagi's Opp'n 7:21-25-8:19.

The Court first addresses Cross-Claimants'
counterarguments.  Cross-Claimants' point—that Cross-
Defendants cannot challenge the Policy's validity, as
the contestability window lapsed—is only facially true.
Insurance policies in California are incontestable
after they have been in issuance for two years, during
the lifetime of the insured.  Cal. Ins. Code § 10113.5.
Here, the policy was issued in 2011 and the Insured
died in 2015.  The contestability period apparently
lapsed in 2013.  But the Court recognizes Cross-
Defendants' allegation that Khader disguised STOLI
policies through straw buyers and fraudulent
applications for at least two years to avoid the
contestability window.  Cross-Defs.' Ans. ¶ 15;
see also Hartford Life & Annuity Ins. Co. v. Doris
Barnes Family 2008 Irrevocable Trust, No. CV 10-7560
PSG (DTBx), 2011 WL 759554, at *4 (C.D. Cal. Feb. 22,
2011)("As the Complaint alleges that the Policy was
procured through [Defendants'] plan . . . to transfer
the beneficial interest in the Policy to third-parties
without insurable interests, Plaintiff's claims are not
barred by the Policy's incontestability
clause.")(internal quotation marks omitted).

Cross-Claimants also argue that the Policy was
freely assignable due to Victoria Rabadi, the
Insured's, insurable interest from the outset.
Although an individual with an insurable interest may
lawfully "have the policy made payable to whomsoever he

or she pleases, regardless of whether the beneficiary designated has an insurable interest," Cal. Ins. Code. § 10110.1(b), the Insured and Cross-Claimants' insurable interest here is suspect. <u>Lincoln Nat'l Life Ins. Co. v. Calhoun</u>, 596 F. Supp. 2d 882, 889 (D.N.J. 2009)("Insureds begin to run afoul of the insurable interest requirement, however, when they intend at the time of the policy's issuance, to profit by transferring the policy to a stranger with no insurable interest at the expiration of the contestability period.")

### i. *Illegal STOLI Policy*

The next issue is whether there are no genuine disputes of material fact as to whether this was a STOLI policy. A STOLI policy is a life insurance policy made for the benefit of a third-party investor who "at the time of policy origination, has no insurable interest, under the laws of this state, in the life of the insured." Cal. Ins. Code. § 10113.1(w). And "[a]ny device, scheme, or artifice designed to give the appearance of an insurable interest where there is no legitimate insurable interest violates the insurable interest laws." <u>Id.</u> § 10110.1(e). Further, STOLI policies are listed under "fraudulent life settlement act[s]" in California Insurance Code section 10113.1(g)(A).

Per Cross-Defendants, Khader and Cross-Claimants associated in a widespread STOLI scheme. Cross-Defs.'

25

Ans. ¶ 12.  Khader recruited the Insured, an older
woman of modest means, as a "straw buyer" in his STOLI
policy scheme.  Cross-Defs.' Mot. 19:5.  He
misrepresented her net worth in order to issue a high-
value life insurance policy.  Id. at 22:10-13.  Third
parties like Cross-Claimants, who allegedly had no
insurable interest in the Insured's life,[8] would then
finance the Policy.  Cross-Defs.' Ans. ¶ 15.  Khader
would then disguise the STOLI policy for at least two-
years, the time window in which Transamerica could have
contested the Policy as the insurer.  Id.  For
instance, Khader did not promptly submit a
questionnaire that would alert Transamerica as to
whether the Policy was a STOLI policy.  Cross-Defs.'
Mot. 20:18-20.

For support, Cross-Defendants cite a handful of
out-of-circuit cases involving garden-variety STOLI
policies factually similar to the one at hand.  See,
e.g., Calhoun, 596 F. Supp. 2d at 889-90 (broker
obtained third-party financing for a life insurance
policy and immediately assigned the policy to an
individual without an insurable interest after the two-
year contestability period); United States v. Bazemore,

---

[8] Cross-Claimants each apparently lack an insurable interest
in Victoria Rabadi's life.  Bill Biltagi is apparently Khader's
"trusted associate" and co-defendant in the Orange County Action.
Cross-Defs.' Ans. ¶ 17.  Intesar Alturk is Khader's mother, and
Yousef Rabadi, "upon information and belief," has no insurable
interest in the proceeds.  Id.

No. 15-10805, at *2 (5th Cir. Oct. 5, 2016)(defendant secured policies for senior citizens of modest means by grossly inflating the applicants' net worth and falsely stating that the insured would not transfer the policy to third parties); United States v. Binday, 804 F.3d 558, 566 (2d Cir. 2015)(STOLI policies involved elderly "straw buyers" with exaggerated net worth, but case affirmed insurance brokers' mail and wire fraud convictions and only discussed STOLI policies for the "cognizable harm" element of wire fraud conviction). But even if these cases involve STOLI schemes that are at least factually similar, the cases are distinguishable because they do not involve the unique interplay of interpled funds, an attorney's Lien, and alleged STOLI schemes present here, nor do they advise the Court why Cross-Defendants' Lien applies.

Cross-Defendants' argument—that there are no genuine disputes regarding the STOLI policy issue—is impeded by this remaining dispute: *how* the Lien applies to the interpled funds. True, the Court did previously acknowledge that Cross-Defendants' affirmative defenses would "directly impact . . . the proper recipient of the Policy proceeds," and if successful, would "reduce or bar Cross-Claimants' claim to the Policy proceeds." Order re Mot. to Strike 5:8-13, ECF No. 51. But even if the affirmative defenses showed that Cross-Claimants were improper beneficiaries, this would not guarantee that Cross-Defendants have a stake in the interpled

funds.  To succeed on that assumption, Cross-Defendants must clearly show how the Lien terms apply to the interpled funds, which the Court takes up in _infra_ Part III.B.7.b.

The Court is similarly puzzled as to how the Policy's alleged illegality permits Cross-Defendants' seemingly unrelated Lien from the State Court Action to attach to the interpled funds.  Cross-Defendants claim the Policy is illegal, yet in the same breath demand their share of proceeds from this apparently illegal Policy.  It would appear that Cross-Defendants raise the illegality affirmative defense to ferret out the improper beneficiaries.  Even if Cross-Defendants are an interested party in law or equity who may dispute the Policy's validity, Cross-Defendants provide the Court little guidance as to why their Lien should apply once the Policy's illegality is established.  _See_ 3 George Couch et al., _Couch on Insurance 3d_ § 41:6 (rev. ed. 2016); _but see Couch on Insurance 3d_ at § 41:5 ("The majority of courts . . . [state] that only the insurer can raise the objection of want of an insurable interest.")

### ii. _CLSA Violations_

Cross-Defendants argue that the April 11, 2013 ownership transfer of the Policy–from the Insured to Nabil Rabadi–violated the CLSA, California Insurance Code § 10113.1 et seq, and was therefore void as a matter of law.  Cross-Defs.' Reply 10:14-16.  As Cross-

Defendants state, "transfers of ownership for a price less than the death benefit [are] illegal if not conducted by a licensed Life Settlement broker." Id. at 10:25-26. California Insurance Code section 10113.2(b)(1), which Cross-Defendants cite, says that "no person may enter into, broker, or solicit life settlements . . . unless that person has been licensed by the commissioner." Here, Nabil Rabadi was not a licensed broker and it was therefore improper for him to receive the ownership transfer without providing the Insured consideration. This unlawful transfer, Cross-Defendants argue, tainted the subsequent ownership transfers, beneficiary designations, and ultimately, the final iteration of the beneficiary interests.

While the CLSA does not have a code section precisely stating that a licensed Life Settlement broker must oversee a transfer for a price less than the death benefit, Cross-Defendants read this illegal transfer into section 10113.2(b)(1), as an act of "broker[ing]" or "solicit[ing]" that only a licensed broker can perform. Cross-Defendants state that Cross-Claimants never produced documentary evidence that the Insured received compensation for the ownership change and Khader, not Nabil Rabadi, was always the insurance agent on the Term Policy, and Increased Policy and Universal Policy. Cross-Defs.' SUF 19:6-9.

Setting aside the stark lack of authority or

explanation as to this alleged CLSA violation,
Cross-Defendants also do not make it clear how and why
Nabil Rabadi—and not Khader, the broker who apparently
orchestrated much of the Policy paperwork—initiated the
ownership transfer.  The ownership change forms appear
only to be initiated and signed by Nabil Rabadi and the
Insured.  But the facts presented are too sparse to
confidently say there are no genuine disputes as to
whether the Policy violated the CLSA.  Even were the
Court to find that the transfer required a broker and
was thus invalid, Cross-Defendants still have not have
linked their Lien to the interpled funds.

>              b.    *Conspiracy to Commit Fraudulent Life*
>                    *Settlement Acts*

Per Cross-Defendants, the undisputed facts
establish that Cross-Claimants were involved in
Khader's conspiracy to issue fraudulent and illegal
STOLI policies, including the Policy at issue.  <u>See</u>
Cross-Defs.' Mot. 21:5-7.

Section 10113.1(g) of the California Insurance Code
defines a "fraudulent life settlement act" as
"[p]resenting, causing to be presented, or prepared . .
. false material information [regarding] the following
. . . [a]n application for the issuance of a life
settlement contract or insurance policy . . . payments
and changes in ownership or beneficiary made in
accordance with the terms of a life settlement contract
or insurance policy."  Other fraudulent life settlement

acts include "entering into stranger-originated life insurance (STOLI)." Id. § 10113.1(g)(1)(B).

Cross-Claimants committed fraudulent life settlement acts, Cross-Defendants argue, by presenting false information about the Insured's net worth on her life insurance application. Cross-Defs.' Mot. 22:10-15. Moreover, Cross-Claimants "knew" that they were conspiring to present materially false information regarding Policy payments and ownership/beneficiary changes through the following facts: (1) Yousef Rabadi wrote that he was the Insured's son and then her nephew; (2) Khader's assistant filled out premium payment checks on Yousef Rabadi's behalf; and (3) Intesar Alturk pretended she was the Insured's "business associate," even though she was Khader's mother. Id. at 22:17-23:5.

Under California law, the elements of civil conspiracy are "the formation and operation of the conspiracy and damage resulting to the plaintiff from an act or acts done in furtherance of a common design." Gonzales v. Lloyds TSB Bank, PLC, 532 F. Supp. 2d 1200, 1208 (C.D. Cal. 2006)(citation omitted). Moreover, aiding and abetting takes place if the defendant "knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or gives substantial assistance to the other in accomplishing a tortious result." Am. Gen. Life Ins. Co. v. Khachatourians, No. CV 08-06408 DDP

(Rzx), 2012 WL 5267683, at \*4 (C.D. Cal. Oct. 24, 2012).

In _Khachatourians_, the court carried over its fraud analysis to find that there was a triable issue of material fact as to the conspiracy charge. _Id._ at \*3. More specifically, the checks for the initial policy premium payments came from one defendant's bank accounts specially created to fund the policy payments. _Id._ And the checks implicitly misrepresented that they complied with the insurance company's rules that the policy could only be funded by the insured, its employer, or its family. _Id._ In its analysis granting summary judgment as to the fraud issue, the Court reasoned that defendant falsely and implicitly represented that the funds were not coming from a third party. _Id._ To a certain extent, Cross-Defendants' facts are similar to those in _Khachatourians_, and the Court could agree that Cross-Claimants conspired to make premium payments from improper individuals and designate individuals without an "insurable interest" as owners and beneficiaries.

But even if there are facts supporting the overall conspiracy, Cross-Defendants run into the same problem as in their "STOLI policy" argument: bridging the gap as to why—if Khader and Cross-Claimants engaged in a conspiracy—Cross-Defendants' Lien applies to the interpled funds and precisely how they have a stake in the purportedly ill-gotten Policy proceeds. From what

the Court can glean in Cross-Defendants' moving papers, Khader and Lotta's forced discharge of Cross-Defendants—after an improper *ex parte* meeting with the State Court Rabadis—"welcomed back" the State Court Rabadis into the Khader conspiracy. Cross-Defs.' Mot. 24:10-15. Apparently, the Lien is connected to the Policy proceeds through the "backdoor effort to avoid [Cross-Defendants'] contingency fee," which in turn facilitated the Khader conspiracy. Id. at 24:17-21. Cross-Defendants theory is that Cross-Claimants and the State Court Rabadis are all part of the same enterprise or conspiracy and colluded to prevent Cross-Defendants from its money owed under the State Court Action Lien.

But Cross-Defendants present no concrete evidence substantiating this tenuous connection. Cross-Defendants and the State Court Rabadis were never beneficiaries to the Policy, nor are they parties to this interpleader action. Biltagi Decl. ¶¶ 2, 5. Cross-Claimants were never Cross-Defendants' clients in the State Court Action with the Lien. Rabadi Decl. ¶ 9, Ex. 1 (email from Cross-Defendants to Yousef Rabadi advising that they are not his attorneys). Cross-Defendants evince no agreement between Cross-Claimants and the State Court Rabadis allowing the State Court Rabadis to share in the Policy proceeds, let alone any evidence that the State Court Rabadis were ever paid the interpled funds. Biltagi Decl. ¶ 9. Moreover, Cross-Defendants have no evidence that Cross-Claimants

and a third-party, like Lotta or Khader, conspired to prevent them from recovering under their Lien. Id. at ¶ 10. Even if the circumstantial evidence suggests the State Court Rabadis are part of the conspiracy, Cross-Defendants still do not show how the interpled funds are interchangeable with the potential Lien funds.

In sum, Cross-Defendants cannot argue that there are no genuine disputes as to validity of their illegality and conspiracy claims, as—even assuming the Policy is invalid and Cross-Claimants are embroiled in a conspiracy, thus barring or reducing Cross-Claimants' claims to the Policy—a dispute remains whether Cross-Defendants have standing to raise these affirmative defenses as a third-party, whether through their Lien or otherwise. Thus, the Court **DENIES** Cross-Defendants' Motion [118-1].

7. The Court **GRANTS** Cross-Claimants' Motions for Summary Judgment [99, 100]

The Court now considers Cross-Claimants' Motions for Summary Judgment.[9]

a. *The Lien's Validity Has Not Been Established*

Cross-Claimants argue that Cross-Defendants cannot assert a claim against the interpled funds because

---

[9] Cross-Claimants raise nearly parallel arguments against the validity and enforceability of Cross-Defendants' Lien in their separate Motions for Summary Judgment [99, 100]. As such, the Court treats them interchangeably for the purposes of this analysis.

Cross-Defendants did not bring an "independent action" against the State Court Rabadis to establish the Lien's value and enforceability from the outset. Rabadi's Mot. 3:17-21; Biltagi's Mot. 3:10-12. Cross-Defendants counter that the interpleader action Transamerica filed constitutes an "independent action" to enforce the Lien. Cross-Defs.' Opp'n 14:1-2. Cross-Defendants' Lien is problematic for two reasons: (1) the interpleader action in this case does not constitute an independent action, and (2) the contingency set forth in the Lien did not take place, thus never triggering the Lien.

An attorney's lien is an equitable right to secure attorneys' fees owed from a judgment or recovery in the lawsuit. 7 Corpus Juris Secundum, Attorney & Client § 523 (rev. ed. 2017). "An attorney's lien is created [] by an attorney fee contract with an express provision regarding the lien . . . ." Mojtahedi v. Vargas, 228 Cal. App. 4th 974, 315-16 (Ct. App. 2014). The lien survives even after the attorney is discharged, and the attorney is then entitled to the reasonable value of his services prior to discharge. See Weiss v. Marcus, 51 Cal. App. 3d 590, 598 (Ct. App. 1975). To enforce the lien, the attorney must adjudicate the lien's value and validity in an "independent action" after a judgment or settlement is rendered. Mojtahedi, 228 Cal. App. 4th at 316.

Shortly after they were discharged, Cross-

Defendants filed a Notice of Attorney's Lien on April 15, 2014, which provides:

> [Cross-Defendants have a lien] on all proceeds and compensation paid to the [State Court Rabadis] in this action, whether in settlement, *after trial, or otherwise*, whether paid in cash or other means, whether transmitted directly or *indirectly by payments to third parties*. Said charging lien includes compensation by or on behalf of *insurance companies*, *brokers*, life settlement companies and escrow companies.

As the California Court of Appeals recently held, the independent action need not be a formal complaint; interpleader may suffice. <u>So. Cal. Gas Co. v. Flannery</u>, 5 Cal. App. 5th 476, 496 (Ct. App. 2016).

In <u>Flannery</u>, Tepper, a law firm, represented two parties and was eventually substituted out. <u>Id.</u> at 481. Tepper's clients and the Southern California Gas Company separately settled, and the Southern California Gas Company deposited the settlement funds and filed a complaint in interpleader, naming Tepper and his clients as some of the claimants. <u>Id.</u> at 482. After Tepper successfully asserted a motion for attorneys' fees, his clients (the other claimants) argued that Tepper did not adjudicate a separate action to establish his lien prior to filing the motion for attorneys' fees. <u>Id.</u> at 494. The Court rejected this argument, holding that the interpleader action satisfied the independent action requirement. <u>Id.</u> Tepper's answer to the interpleader complaint placed the lien's enforceability at issue against his former

clients. _Id._ at 496. The answer and motion for attorneys' fees, coupled together, were akin to Tepper filing an independent action to enforce his lien.

Cross-Defendants claim that, per _Flannery_, an interpleader action constitutes an independent action to perfect its lien. But the _Flannery_ analysis is more nuanced than Cross-Defendants lead on. The interpleader in _Flannery_ was between the law firm and its clients; here, unlike _Flannery_, Cross-Defendants' former clients were not parties to the interpleader action Transamerica instituted. Rabadi's Reply 5:1-7. The fact that the client was named in the interpleader action was deemed "crucial" in the _Flannery_ analysis. _Id._ at 496. The interpleader action here, unlike the one in _Flannery_, concerns whether Cross-Claimants or Cross-Defendants are entitled to the interpled funds; the State Court Rabadis are simply not claimants to the Interpleader Action. It makes little sense for Cross-Defendants to argue that the interpleader will resolve its Lien's validity as against its clients. Further, resolution of which claimant has rights to the interpled funds here seemingly has no bearing on the validity and applicability of the Lien, which applied to a wholly separate state-court proceeding.

The Lien is also unenforceable because the contingency stated in the contingency fee agreement never came to fruition. "[L]iens created in a contingency fee contract" are not enforceable until the

37

occurrence of the stated contingency." <u>Fracasse v. Brent</u>, 6 Cal. 3d 784, 792 (1972). Cross-Claimants argue that because the state-court action was dismissed in July 2016 without a settlement, the contingency fee agreement and the underlying Lien had no proceeds to draw from. The Lien here sought "compensation of any kind paid to . . . *Josef Rabadi, Reem Rabadi, and/or Sandra Rabadi ("Clients") in this action.*" Orlando Decl. Ex. 1 (emphasis added). The contingency would not apply until the State Court Rabadis received compensation from their now-dismissed State Court Action. That Lotta and Khader allegedly impeded the contingency from occurring by substituting out Cross-Defendants and apparently locating an attorney who would dismiss the case, Lysaght Supp. Decl. ¶ 5, does not disturb the undisputed facts that Cross-Defendants did not establish the Lien's validity.

> b. *The Lien is Inapplicable to the Interpled Funds*

Even were the Court to assume that Cross-Defendants established the Lien's validity, the fact remains that the Lien is inapplicable to the interpled funds.

Per Cross-Claimants, the Lien does not apply to the interpled funds unless Cross-Defendants can show the State Court Rabadis would receive the Policy proceeds in the State Court Action. Biltagi's Mot. at 15:4-8. Cross-Defendants counter that the lack of a direct relationship between Cross-Claimants and the State

Court Rabadis does not necessarily deny it relief.  <u>Id.</u>
at 15:1-3.  This is because its conspiracy, unclean
hands, and illegality affirmative defenses affect the
proper recipient of the Policy proceeds.  <u>Id.</u> at 15:4-
6.  But the Court has already decided that Cross-
Defendants' affirmative defenses are useless without a
showing that the Lien applies to the interpled funds.
<u>See</u> <u>supra</u> Part III.B.6.a-b.  Thus, the Court turns to
the plain language of the Lien.

The Lien terms make it clear that they govern
proceeds from the State Court Action.  As contemplated
in the contingency fee agreement, the Lien applies to
"causes of action that are the subject of the
representation."  Boniadi Decl. Ex. 1, at 8.  The Lien
would attach to "any recovery obtained, whether by
arbitration, award, judgement, settlement or
otherwise."  <u>Id.</u> at 9.  And the Notice of Lien sought
all proceeds paid to the State Court Rabadis "in this
action . . . whether transmitted directly or indirectly
by payments to third parties . . . [including]
compensation by or on behalf of insurance companies,
brokers."  Orlando Decl. Ex. 1.  The Notice of Lien
mentions compensation from insurance companies or
payments to third parties.  <u>Id.</u>  Even if the State
Court Rabadis were paid the Policy proceeds, by Cross-
Claimants, a broker like Khader, or an insurance
company like Transamerica, Cross-Defendants still
cannot demonstrate that these payments constitute

"proceeds and compensation" in the State Court Action.

The onus is on Cross-Defendants to connect any recovery in the State Court Action to the interpled funds. Cross-Defendants again vaguely argue about the overarching "Khader enterprise." Khader apparently is the common figure duping the State Court Rabadis and apparently manipulating the current Cross-Claimants into his insurance fraud scheme. Because the State Court Action and this case both encompass Khader's far-flung wrongdoing, Cross-Defendants' logic goes, any wrongful payments from Khader in the State Court Action—whether for cooperating with the case's dismissal or otherwise—are intertwined with the Policy proceeds. But Cross-Defendants still cannot overcome that the Lien's terms only apply to the State Court Rabadis, and none of the Cross-Claimants are mentioned.

The following disputed facts also apparently link the Lien and its applicants, the State Court Rabadis, to the interpled funds: Intesar Alturk is a member of Khader's illegal enterprise; in 2004, Intesar Alturk extended a line of credit to Josef Rabadi, a State Court Rabadi, totaling $650,000; Intesar Alturk paid Reem Rabadi, another State Court Rabadi, "hundreds of thousands of dollars;" Intesar Alturk transferred over $1.6 million to Josef Rabadi in 2007; and Cross-Claimants and the State Court Rabadis are from the same family and share the same address. Cross-Defs.' SUF ¶¶ 6-8.

Cross-Defendants have made little effort to marshal these facts in such a way that would convince the Court that the Lien from the State Court Action applies here. Intesar Alturk, a Cross-Claimant in this case, purportedly paid Josef Rabadi, one of Cross-Defendants former clients, over $1.6 million in 2005 and 2007. Cross-Defs.' SUF ¶ 8. These alleged events occurred well over 6-8 years before Cross-Defendants even signed the contingency fee agreement with the State Court Rabadis in May 2013. And vague references to Cross-Claimants' role in Khader's "enterprise" do nothing to bridge the wide gap between the Lien's terms and the interpled funds here. This is not a problem of the Court's interpretation of the Lien-the Lien is quite explicit about how and to what funds it applies. If Cross-Defendants sought to advocate for a different, plausible interpretation of the Lien, they had a burden to do so in their moving papers. They did not meet this burden.

At bottom, Cross-Defendants try to chip away at Cross-Claimants' rights to the interpled funds by arguing extensively about the illegality and conspiracy affirmative defenses. Cross-Defendants file countless declarations, exhibits, and raise a dizzying array of facts, many of which are repeated allegations from the State Court Action and information gleaned from the Orange County Action. And still, Cross-Defendants never expressly address how the Lien attaches to the

interpled funds. Cross-Defendants' argument, in essence, is one of default: if Cross-Claimants are not entitled to the tainted Policy proceeds, then Cross-Defendants, by default, receive them. Biltagi's Opp'n 3:12-18. No matter how correct Cross-Defendants' affirmative defenses might be in isolation, Cross-Defendants still cannot get their Lien's validity and applicability off the ground.

Cross-Defendants have not created genuine disputes as to whether the Lien is valid and applicable. As such, the Court grants Cross-Claimants' Motions for Summary Judgment as to the (1) Complaint-In-Interpleader; and (2) the Cross-Claim seeking a declaratory judgment that the Lien is unenforceable and inapplicable to the interpled funds.

### IV. CONCLUSION

Thus, the Court **GRANTS** Cross-Claimants' Motions for Summary Judgment [99, 100] and **DENIES** Cross-Defendants' Motion for Summary Judgment [118].

**IT IS SO ORDERED.**

DATED: April 18, 2017

s/ RONALD S.W. LEW
**HONORABLE RONALD S.W. LEW**
Senior U.S. District Judge